IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


WARREN JACOBY,                    :    CIVIL ACTION
                                  :    NO. 09-5661
        Plaintiff,               :
                                  :
        v.                        :
                                  :
BETHLEHEM SUBURBAN                :
MOTOR SALES,                      :
                                  :
        Defendant.                :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          May 16, 2011


## I.    INTRODUCTION

        Plaintiff Warren Jacoby ("Plaintiff") filed a four

count complaint against Bethlehem Suburban Motor Sales d/b/a

Bethlehem Ford ("Defendant") alleging age and disability

discrimination pursuant to the Age Discrimination in Employment

Act ("ADEA"), the Americans with Disabilities Act ("ADA"), and

the Pennsylvania Human Relations Act ("PHRA").  (Compl. ¶ 30-57.)

Discovery is now complete, and Defendant has filed a motion for

summary judgment as to all of Plaintiff's claims.  (Def.'s Mot.

for Summ. J. at 4.)  Based on the following analysis, the Court

will grant Defendant's motion.


1

## II. BACKGROUND

Plaintiff is a seventy-four year old car sales person who began working at Defendant's lot in October 1969. (Pl.'s Resp. at 2.) Plaintiff worked in this capacity for thirty-nine years, until August 21, 2008. (Id.) During the course of Plaintiff's employment he was very successful. In June 2003, at age sixty-seven, Plaintiff underwent prostate surgery and took a medical leave of absence for a period of six months, after which he returned to full-time employment with Defendant. (Id. at 3.) Beginning in 2007, Plaintiff began experiencing health problems stemming from his diagnosis of neuropathy in both legs. The neuropathy caused Plaintiff balance problems, difficulties walking, and required the use of a cane. However, despite these medical problems, these symptoms did not prevent Plaintiff from doing his job effectively.

On May 11, 2008, at the age of seventy-two, Plaintiff suffered a serious heart attack requiring hospitalization and a period of medical leave of absence. (Compl. ¶ 25.) Following his heart attack, Plaintiff applied for, and received, short-term disability benefits from American Fidelity Assurance Company for a period of six months. Plaintiff claims that, following Defendant's discovery of Plaintiff's heart attack, Defendant immediately and discriminatorily assumed, without any express information from Plaintiff or his family, that Plaintiff was

unable to return to work. (Pl.'s Resp at 5-6.) As such, Plaintiff was terminated via letter on August 21, 2008.

It is undisputed that, during the fifteen week period from the date of Plaintiff's heart attack to his ultimate termination, Plaintiff never requested an accommodation or contacted Defendant in regards to his return to work. (Pl.'s Dep. at 44:11-18.) Defendant's President, Mr. Lee Kelechava ("Mr. Kelechava"), states that Plaintiff was not fired due to his age or disability, but rather because Defendant was unable to obtain a date on which Plaintiff would return to work. Moreover, Mr. Kelechava states that he acted on the advice of counsel when he sent Plaintiff the letter stating that Defendant was treating Plaintiff's employment as terminated. (Def.'s Mot. Summ. J. at 3.) Plaintiff never responded to Defendant's termination letter. Rather, Plaintiff filed a Charge of Discrimination on January 9, 2009. Thereafter, Plaintiff filed the complaint currently before this Court.

## III. DISCUSSION

### A. <u>Summary Judgment Standard</u>

Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence'

of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986)). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

In undertaking this analysis, the court views the facts in the light most favorable to the non-moving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010) (citing Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997)). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the non-moving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

B.  Exhaustion of Administrative Remedies

In order to bring suit under the ADA, ADEA, and PHRA, a plaintiff must first exhaust his administrative remedies. The

ADEA and ADA require that a plaintiff file a complaint with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the alleged discriminatory conduct if the plaintiff has filed a complaint with a local or state agency, such as the Pennsylvania Human Relations Commission ("PHRC"). 42 U.S.C. § 2000e-5(e)(1) (2011); see Seredinski v. Clifton Precision Prods. Co., 776 F.2d 56, 61 (3d Cir. 1985) (stating that in a deferral state, such as Pennsylvania, a plaintiff has 300 days from the date of the alleged unlawful employment practice to file with the EEOC).[1]

Here, Plaintiff filed his Charge of Discrimination with the EEOC on January 9, 2009. Three hundred days prior to the filing date is March 15, 2008. Therefore, any claims of discrimination which took place on or after March 15, 2008 are not administratively barred. The only act of alleged discrimination which clearly took place after March 15, 2008 is Plaintiff's termination. As such, this act is not time barred. Plaintiff's complaint, however, references various other allegedly discriminatory acts which all occurred prior to March 15, 2008. Plaintiff argues that although these acts occurred

---

[1]      Under the PHRA, a plaintiff must file with the PHRC within 180 days of the discriminatory conduct. Consequently, any facts barred for federal discrimination law purposes are also barred for purposes of the PHRA claim. See Pittman v. Cont'l Airlines, 35 F. Supp. 2d 434, 441 (E.D. Pa. 1999) (citing 43 Pa. Cons. Stat. Ann. § 959(h)).

prior to March 15, 2008, they were timely filed based on the continuing violation theory.[2]

The continuing violation theory allows a plaintiff to pursue a claim of discrimination for acts that occurred prior to the filing period if he or she can show that the discriminatory acts are part of a continuing practice or pattern of discrimination.  Cowell v. Palmer Twp., 263 F.3d 286, 292 (3d Cir. 2001).  For the continuing violation theory to apply, a plaintiff must demonstrate that at least one discriminatory act occurred within the filing period and that the discriminatory conduct is an ongoing pattern, rather than an isolated or sporadic occurrence.  West v. Phila. Elec. Co., 45 F.3d 744, 754-55 (3d Cir. 1995).  In determining whether a plaintiff has shown an ongoing pattern of discrimination, this Court must consider: (1) whether the violations constitute the same type of discrimination; (2) the frequency of the alleged discriminatory

_____

[2]    Defendant argues that this theory is unavailable because Plaintiff did not plead the theory in his complaint nor check the box denoting as much on his EEOC charge of discrimination form.  The Court, however, will consider Plaintiff's application of this theory because Defendant had notice that this theory could be applied given that many of the dates set forth in the complaint occur outside the filing period.  See Phillips v. Heydt, 197 F. Supp. 2d 207, 217 (E.D. Pa. 2002) (examining Plaintiff's continuing violation argument even though plaintiff did not check continuing violation box on EEOC form and examining "the substance of the allegations, rather than specific language of the pleadings, to determine if a plaintiff has properly invoked the doctrine").

acts; and (3) the degree of permanence, i.e., whether the nature
of any of the violations should have triggered the employee's
awareness of the need to assert his rights and whether the
consequences of the act, such as being fired or being denied a
promotion, would continue even in the absence of a continuing
intent to discriminate. Rush v. Scott Specialty Gases, Inc., 113
F.3d 476, 481-82 (3d Cir. 1997). If a plaintiff meets these
requirements, then he or she can recover for all of the
discriminatory acts that constitute the continuing violation,
regardless of whether they fall within the 300 day filing period.
Id. at 481.

Plaintiff's response to Defendant's motion for summary
judgment indicates that Plaintiff is applying this theory in the
context of a hostile work environment claim. In particular,
Plaintiff is alleging that he was subject to a series of acts
that occurred prior to March 15, 2008 which, in culmination,
created a hostile work environment. (See Pl.'s Resp. at 10
("Here, the record supports a finding that Plaintiff was
routinely subjected to a pattern of harassment on the basis of
his age and disability from the period in which he was first
diagnosed . . . through his last day of work . . . .").) Proper
application of the continuing violation theory requires that
Plaintiff first show that at least one discriminatory act, which
is part of the alleged ongoing pattern of discrimination,

7

occurred within the filing period.  If Plaintiff can establish

this, he must then show that the alleged incidents of

discrimination are so pervasive as to create a pattern of

discrimination.

Plaintiff attempts to fulfill the first requirement by

pointing to alleged jokes and comments made by his co-workers and

boss which, he now claims, occurred until May 10, 2008, his last

day of work.[3]  Plaintiff bears the burden of demonstrating that

at least one comment was made within the filling period.  See

West, 45 F.3d at 754-55 ("To establish that a claim falls within

---

[3]      In Plaintiff's deposition, Plaintiff elaborates on the
allegation that Defendant's employees made fun of him because of
his disability and age.  Plaintiff states that the employees
"would make fun of me because of the way I walked.  They used to
say I should have a motorized or a golf cart to take the people
in the lot on the other side to look at the automobiles and
trucks.  This was from time to time.  That was very distressful."
(Pl.'s Dep. at 71:4-9.)  Plaintiff also stated that Mr. Kelechava
made fun of Plaintiff by stating "Warren, I think we are going to
get you something to help you get around better, since you have
neuropathy, a golf cart or whatever you need."  (Id. at 71:22-
25.)  Plaintiff explained that he took this statement to be
making fun of him because he is a top salesman and would not have
accepted the help of a motorized cart.  (Id. at 72:1-13.)
Additionally, Plaintiff states that one employee, Ray Ruiz,
teased Plaintiff by volunteering to bring cars up to the showroom
for Plaintiff in the wintertime because Plaintiff had difficulty
getting around.  (Id. at 91:3-9.)  Plaintiff also states that
there were times co-workers would tell Plaintiff he should retire
because of his age.  (Id. at 15-25.)  Finally, Plaintiff states
that one employee tapped Plaintiff on the shoulder when Plaintiff
fell asleep at work and told Plaintiff that he had to stay awake.
(Id. at 92:16-25.)  Although Plaintiff perceived these as
occurrences in which the other employees were teasing him, he
never reported these incidents to management or asked anyone to
stop making such comments.  (Id. at 73:24-25, 74:1-25.)

the continuing violations theory, the plaintiff must do two things. First, he must demonstrate that at least one act occurred within the filing period . . . .").

Defendant points to the fact that the record and Plaintiff's briefing are barren of any evidence indicating that these comments occurred within the filing period. (Def.'s Reply at 2 n.2.) In fact, Plaintiff's complaint states that the alleged teasing occurred outside of the filing period in 2007. (Compl. at ¶ 22.) The only instance in which Plaintiff indicates that these alleged comments and jokes persisted until his last day of work is in response to Defendant's motion for summary judgment. (Pl.'s Resp. at 12 (describing "harassment (hostile work environment) which continued through his last day of work on May 10, 2008").) Other than this generalized statement, the record is devoid of any reference to the dates in which these comments were made. For example, in Plaintiff's deposition, he does not attest to the dates on which these comments occurred. The most specific indication of timing provided by Plaintiff is that the derogatory comments occurred from "time to time." (Pl.'s Dep. at 71:4-9.) Indeed, Plaintiff could not even remember the last time someone said something that caused Plaintiff distress. (Id. at 75:17-23, 91:19-20.) Given this bare record, Plaintiff has not adduced sufficient evidence for a reasonable jury to find that any of the teasing occurred within

the filling period.

Moreover, even if a reasonable jury could so conclude, it would not be able to find that the comments, in combination with the loss of Plaintiff's demonstration car and office, are enough to amount to a pattern of discrimination.  See West, 45 F.3d at 754-55 (stating that after establishing one occurrence of the act within the time period "the plaintiff must establish that the harassment is 'more than the occurrence of isolated or sporadic acts of intentional discrimination.'" (quoting Jewett v. Int'l Tel. & Tel. Corp., 653 F.2d 89, 91 (3d Cir. 1981))).  The most that can be concluded is that the comments occurred sporadically.  (See Pl.'s Dep. at 71:4-9 (stating these comments occurred from "time to time").)  Consequently, the Court will not apply the continuing violation doctrine and Plaintiff's claims relating to comments and jokes that occurred before the filing period are time barred.[4]

Additionally, Plaintiff raises claims regarding a split

---

[4]    Plaintiff's claims regarding the loss of his demonstration car and loss of his office are not actionable because they too fall outside the filing period, and they cannot be saved under the continuing violation theory because Plaintiff has not put forth facts to create a genuine issue as to whether these acts occurred within the filing period.  (See Pl.'s Dep. at 53:3, 76:6-23 (loss of demonstration car occurred in December 2007 and loss of office occurred in February 2008).)

    Because Plaintiff's claims relating to jokes and comments are time barred, the Court will not analyze this case pursuant to a theory of hostile work environment.  Rather, the Court will examine this as a claim for disparate treatment.

commission policy.  These claims cannot be saved by the
continuing violation doctrine because there is no genuine issue
of material fact as to whether this facially neutral policy was
created or applied to Plaintiff on a date within the filing
period.  The Supreme Court has held that there is no continuing
violation where the effects of prior discriminatory acts, but no
actual discrimination, occurred within the limitations period.
Cardenas v. Massey, 269 F.3d 251, 256 (3d Cir. 2001) (citing
Lorance v. AT&T Techs., Inc., 490 U.S. 900 (1989), rev'd by the
Civil Rights Act of 1991, § 112; Del. State Coll. v. Ricks, 449
U.S. 250 (1980); United Air Lines, Inc. v. Evans, 431 U.S. 553
(1977)).  In Lorance, Ricks, and Evans, the plaintiff's claims
were "barred where the relevant aspect of the employment system
(such as promotion, seniority, or termination) [was] facially
neutral, and any discrete discriminatory conduct took place and
ceased outside the period of limitations."  Cardenas, 269 F.3d at
256.  In Cardenas, however, the Third Circuit held that those
cases do not bar claims based on conduct which is alleged to have
"continued to discriminate unlawfully each time it was applied."
Id. at 257; see id. (holding that each of a series of
discriminatory paychecks was a distinct violation of plaintiff's
right to nondiscriminatory compensation, even though the
disparate pay stemmed from a pre-limitations period pay-grade
classification).

11

Here, Defendant points to the absence of evidence indicating that this policy was created or applied to Plaintiff within the filing period. As discussed above, Plaintiff bears the burden of demonstrating that at least one discriminatory act occurred after March 15, 2008. Plaintiff only discusses one instance in which he was allegedly subject to the split commission policy, but this date is almost a year before March 15, 2008. (See Pl.'s Dep. at 62:24 (stating the incident he refers to in his Charge of Discrimination occurred on March 14, 2007).) Additionally, Plaintiff states that the policy was instituted, as to him, in December 2007 which is also a time outside of the filling period. (Pl.'s Dep. at 67:14.) The only place Plaintiff claims the splitting of commissions occurred within the relevant time period is in his response to Defendant's motion for summary judgment where he states, again without any reference to the record, that Plaintiff's claims regarding splitting commissions are not time barred because "the discrete adverse action of having been required to split commissions . . . continued through his last day of work on May 10, 2008." (Pl.'s Resp. at 12.) No evidence supporting this allegation appears in the record, and Plaintiff has not pointed to any evidence to the contrary. As such, the Court will not apply the continuing violation theory and Plaintiff's claims relating to this are administratively barred.

Based on the foregoing, the Court finds that
Plaintiff's claims, to the extent they pertain to actions
predating the 300 day period for filling, are time barred.[5]


C.   Claims Under the ADEA and the PHRA Alleging Age
     Discrimination[6]

When assessing claims under the ADEA and PHRA, the
Court applies the burden-shifting framework set forth in
McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Under
that test,

> [T]he plaintiff bears the burden of proof and
> the initial burden of production, having to
> demonstrate a prima facie case of
> discrimination by showing first, that the
> plaintiff is forty years of age or older;

---

[5]   While the 300 day limitations period precludes claims
arising prior to March 15, 2008, these non-actionable events
provide relevant background to an interpretation of the
significance of subsequent events, such as Plaintiff's
termination.  See Pittman v. Cont'l Airlines, Inc., 35 F. Supp.
2d 434, 444 n. 10 (E.D. Pa. 1999) (quoting Rorie v. United Parcel
Serv., Inc., 151 F.3d 757, 761 (8th Cir. 1998) ( "Even if a
plaintiff is unable to show a continuing violation, . . .
instances of harassment occurring outside the [limitations]
period may be admissible to provide relevant background to later
discriminatory acts.")).

[6]   State law claims pursuant to the PHRA are analyzed
under the same framework as federal claims.  Wilson v. Mobilex
USA, Inc., 406 F. App'x 625, 626 (3d Cir. 2011) (stating
McDonnell Douglas burden-shifting framework applies to claims for
age and gender discrimination brought under the PHRA).

> second, that the defendant took an adverse
> employment action against the plaintiff;
> third, that the plaintiff was qualified for
> the position in question; and fourth, that
> the plaintiff was ultimately replaced by
> another employee who was sufficiently younger
> to support an inference of discriminatory
> animus.

Smith v. City of Allentown, 589 F.3d 684, 689-90 (3d Cir. 2009).

Once the plaintiff satisfies these elements, "the burden of production shifts to the employer to identify a legitimate non-discriminatory reason for the adverse employment action." Id. at 690. If the employer does so, "the burden of production returns to the plaintiff to demonstrate that the employer's proffered rationale was a pretext for age discrimination." Id. At all times, the burden of persuasion rests with the plaintiff. Id.

Here, Defendant attacks Plaintiff's prima facie case. (Def.'s Mot. for Summ. J. at 8.) Defendant concedes that Plaintiff meets the first element of the prima facie case because Plaintiff was over the age of forty for the majority of the time he worked at Defendant's dealership. As to the second element, Plaintiff must put forth evidence that Defendant took an adverse action against Plaintiff. Plaintiff has fulfilled this burden by putting forth evidence establishing that Defendant was terminated. 29 U.S.C. § 623(a)(1) (stating it shall be unlawful for an employer to discharge on the basis of an individual's

age).  Plaintiff has also established the third element of
qualification for the position by asserting that "[f]or thirty-
nine (39) years leading up to his date of termination on August
21, 2008, Plaintiff was a leading salesperson."  (Compl. ¶ 7.)
Defendant does not dispute this fact.

As to the final element, Defendant argues that
Plaintiff has not put forth any evidence to indicate that
Plaintiff's position was filled by another individual that was
substantially younger.  As such, Defendant asserts that Plaintiff
has not created an inference of discrimination.  (Def.'s Mot. for
Summ. J. at 10.)  Plaintiff, on the other hand, argues that the
record shows that "Plaintiff was the oldest sales person employed
by Defendant and that following his termination, all sales person
who remained were younger than he."  (Pl.'s Resp. at 30, Ex. 12
at 2-3.)  In support of this assertion, Plaintiff points to the
ages of Defendant's employees from July 2007 to September 2008–a
time frame covering when Plaintiff was discharged.  (Id.)

Based on these facts, no reasonable jury could conclude
(1) that Plaintiff was replaced, or (2) that the person who
replaced Plaintiff was substantially younger.  The most that can
be inferred under these circumstances is that Plaintiff's duties
were redistributed and absorbed by the other salespeople and,
because these people were younger than Plaintiff, his position
was filled by someone younger.  The test, however, is not whether

Plaintiff's position was filled by someone younger, the test is whether the position was filled by someone <u>substantially</u> younger. Plaintiff has failed to put forth any evidence indicating what salesperson, if any, took over his duties when he was fired. Thus, it cannot be determined whether the individual who replaced Plaintiff, if anyone replaced Plaintiff, was substantially younger than Plaintiff. <u>See</u> <u>Winter v. Cycam/MedSource Tech.</u>, 166 F. App'x 593, 595 (3d Cir. 2006) (affirming summary judgement as to ADEA claim because Plaintiff failed to provide evidence that she was replaced by a substantially younger employee).

Moreover, even if Plaintiff could establish that he was replaced by someone substantially younger, Plaintiff has not put forth any evidence to indicate that Defendant's legitimate nondiscriminatory reason for terminating Plaintiff's employment was a pretext and he was truly fired because of his age. In order to create a genuine issue of material fact as to whether the proffered reasons are pretextual, Plaintiff must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." <u>Tomasso v. Boeing Co.</u>, 445 F.3d 702, 706 (3d Cir. 2006) (internal citation omitted).

Here, Defendant has provided legitimate nondiscriminatory reasons for firing Plaintiff. Mr. Kelechava states in his deposition that Plaintiff was fired because he did not contact Defendant for fifteen weeks regarding his employment. (Pl.'s Resp. at Ex. 2, 66:1-25.) Moreover, Mr. Kelechava states that the termination letter was sent to Plaintiff on the advice of counsel. (Id. at 78:12-22.) In response, Plaintiff argues that he liked his job and was not planning on retiring and that everyone knew this fact. Plaintiff also points to testimony from a former manager, in which the manager stated that he did not known when Plaintiff would return to work, but he assumed Plaintiff was done with work due to the heart attack. (Pl.'s Resp. at Ex. 4, 61:1-25.) This evidence, however, is insufficient to raise a genuine issue of material fact as to whether Defendant's proffered legitimate reasons are pretextual. The testimony by the manager is the testimony of an individual who was not responsible for Plaintiff's termination. Moreover, the only issue this manager discusses is Plaintiff's health condition and not his age.

Therefore, the Court will grant summary judgment in favor of Defendant on counts I and III.

D.  Claims Under the ADA and PHRA for Age Discrimination[7]

The ADA prohibits an employer from discriminating against a qualified individual with a disability because of the disability.  42 U.S.C. § 12101.  To prevail under the ADA, an employee must show "that [he or she] 1) has a disability, 2) is a qualified individual, and 3) has suffered an adverse employment action because of that disability."  Turner v. Hershey Chocolate U.S., 440 F.3d 604, 611 (3d Cir. 2006) (internal quotation omitted).  No dispute exists as to the first prong because Defendant concedes that Plaintiff is actually disabled.[8]  (Def.'s

---

[7]    The Court will analyze Plaintiff's ADA and PHRA claims the same.  See Buskirk v. Apollo Metals, 307 F.3d 160, 166 n.1 (3d Cir. 2002) ("The PHRA and the ADA are 'basically the same . . . in relevant respects and Pennsylvania courts . . . generally interpret the PHRA in accord with its federal counterparts.'" (quoting Rinehimer v. Cemcolift, Inc., 292 F.3d 375, 382 (3d Cir. 2002))).

[8]    In relation to this first element, the ADA has provided a three-part definition of the term disability: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(1).  Because the ADA lists the three subcategories in the disjunctive, Plaintiff only has to show that he is disabled under one of the three subparts to establish the first element of a prima facie disability discrimination case.  See Sutton v. United Air Lines, Inc., 527 U.S. 471, 489 (1999) ("Our conclusion that petitioners have failed to state a claim that they are actually disabled under subsection (A) of the disability definition does not end our inquiry. Under subsection (C), individuals who are 'regarded as' having a disability are disabled within the meaning of the ADA."), superseded by statute on other grounds, Amendments Act of 2008, Pub.L. No. 110-325, § 3(4)(E)(i), 122 Stat. 3553 (2008).  Moreover, a plaintiff can proffer both a theory that he has an actual disability and a theory that he is regarded as disabled.  See Taylor v. Pathmark

Mot. for Summ. J. at 11.)

As to the second prong, a qualified individual is one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); Turner, 440 F.3d at 611. This inquiry has two parts: "(1) whether the individual has the requisite skill, experience, education and other job-related requirements of the position sought, and (2) whether the individual, with or without reasonable accommodation, can perform the essential functions of that position." Turner, 440 F.3d at 611 (citing 29 C.F.R. § 1630.2(m)). The term "reasonable accommodation," in relevant part, means "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified

───────────────

Stores, Inc., 177 F.3d 180, 189 (3d Cir. 1999) ("[A] plaintiff may plead in the alternative, and our caselaw finds no difficulty with pairing the two claims in one complaint.").

Here, Plaintiff is proceeding under both an "actual disability" theory and a "regarded as" theory. (Pl.'s Resp. at 13.) Since Defendant has conceded that Plaintiff has an actual disability, the Court need not differentiate between the two theories for purposes of this motion. Additionally, based on the Court's determination relating to the continuing violation theory, the only relevant inquiry is whether Plaintiff had an actual disability at the time of his termination. This fact is not in dispute given that Plaintiff was unable to work at that time.

individual with a disability to perform the essential functions of that position."  29 C.F.R. § 1630.2(o).

Here, Defendant does not contest that Plaintiff has the requisite skill, experience, education and other job-related requirements to fulfill the duties of his position as a salesperson.  Rather, Defendant argues that Plaintiff was unable to perform his job with or without a <u>reasonable</u> accommodation at the time of Plaintiff's termination.  Prior to Plaintiff's heart attack, it is undisputed that Plaintiff was able to perform his duties without a reasonable accommodation.[9]  However, the Court has determined that the alleged adverse actions that occurred prior to the filing period are time barred.  As such, the fact that Plaintiff was qualified at the time of those alleged adverse actions is immaterial.  What is relevant for this analysis is whether Plaintiff was a qualified individual within the meaning of the ADA at the time of his termination.

Defendant argues that after Plaintiff's heart attack and up until his termination, Plaintiff was unable to perform the essential functions of his job with or without a reasonable accommodation because Plaintiff was unable to return to work for an indefinite period of time.  Plaintiff admits that "following his heart attack in May 2008, he was incapable of returning to

_____

[9]     "Prior to his heart attack, during his employment, Plaintiff needed no reasonable accommodation of any type." (Def.'s Mot. for Summ. J. at 12.)

work for a period of time during which he was recovering from his health event." (Pl.'s Resp. at 20.) Plaintiff, however, argues that Defendant's assumption that Plaintiff has been "completely disabled since this time and therefore incapable of returning to work finds only the slightest support in the record which is rebuttable by additional evidence of the same variety sighted to by Defendant." (Id.) The critical issue before the Court is whether Plaintiff could, with reasonable accommodations, perform the essential functions of his job following his heart attack.

An employer commits unlawful discrimination under the ADA when it does "not mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the business [of the employer]." 42 U.S.C. § 12112(b)(5)(A). The ADA requires that employers and employees engage in an interactive process to identify the employee's limitations resulting from a disability and the kinds of accommodation which would be both appropriate and feasible. 29 C.F.R. § 1630.2(o)(3). The Third Circuit has held that "both parties have a duty to assist in the search for appropriate reasonable accommodation and to act in good faith." Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 312 (3d Cir. 1999).

In Taylor, the Third Circuit divided the interactive process into two steps. First, the court examined the notice that must be given to the employer to trigger the employer's obligations under the interactive process. Second, the court elaborated on the employee's and employer's duties once the interactive process comes into play. Id. at 312-13. The first question is who must make the request for accommodation and what form must that request take. The EEOC compliance manual provides that "a family member, friend, health professional, or other representative may request a reasonable accommodation on behalf of an individual with a disability." 2 EEOC Compliance Manual, Enforcement Guidance for Psychiatric Disabilities, at 20-21. "[W]hile the notice does not have to be in writing, be made by the employee, or formally invoke the magic words 'reasonable accommodation,' the notice nonetheless must make clear that the employee wants assistance for his or her disability. In other words, the employer must know of both the disability and the employee's desire for accommodations for that disability." Taylor, 184 F.3d 31.

Here, it is undisputed that Plaintiff never requested an accommodation or even contacted Defendant between the time of his May 2008 heart attack and his August 2008 termination. (Pl.'s Dep. at 44:11-18.) In fact, Plaintiff stated that he did not contact Defendant at all during this time to discuss his

medical status because he "didn't think it would be any concern to them." (Id. at 44:14-18.)  Additionally, in Plaintiff's response to Defendant's motion for summary judgment, Plaintiff states that he "never called Defendant to inform it of his ability to return to work." (Pl.'s Resp. at 21.)

Mr. Kelechava's deposition confirms that Plaintiff never notified the Defendant as to whether he was going to return to work and whether he needed an accommodation.  Mr. Kelechava states that he knew Defendant suffered a heart attack in May 2008, and he visited Plaintiff at the hospital shortly after the heart attack. (Pl.'s Resp. at Ex. 2, 60-61.)  Additionally, Mr. Kelechava states that he called Plaintiff while Plaintiff was home. (Id. at 63.)  Mr. Kelechava states that, during their phone conversations, Plaintiff never discussed returning to work. (Id.)  Additionally, after contacting Plaintiff on various occasions, but receiving no response from Plaintiff, Defendant sent Plaintiff a letter indicating that the company was deeming Plaintiff's employment as terminated.  Defendant never received a response in regards to this letter. (Id. at 65:10-17.)  Mr. Kelechava, moreover, testified that Defendant was never notified by Plaintiff's doctors as to Defendant's status. (Id. at 75:10-15.)  Based on Plaintiff's own testimony, no genuine issue of material fact exists as to whether Plaintiff or a representative of Plaintiff provided Defendant with adequate notice to trigger

Defendant's obligations under the interactive process.

Even if Defendant was provided proper notice, the only accommodation Defendant could have provided, under the circumstances, would be indefinite leave and such an accommodation is not reasonable. Peter v. Lincoln Technical Inst., Inc., 255 F. Supp. 2d 417, 437 n.7 (E.D. Pa. 2002) ("Many courts have found that a request for indefinite leave is inherently unreasonable, particularly where there is no favorable prognosis." (citing Shannon v. City of Phila., No. 98-5277, 1999 WL 1065210 (E.D. Pa. Nov. 23, 1999))); See also Myers v. Hose, 50 F.3d 278, 283 (4th Cir. 1995); Rogers v. Int'l Marine Terminals, Inc., 87 F.3d 755, 759-60 (5th Cir. 1996) (same); Hudson v. MCI Telecomm.'s Corp., 87 F.3d 1167, 1169 (10th Cir. 1996) (stating that indefinite leave with no indication of favorable prognosis was not reasonable accommodation); Monette v. Elec. Data Sys. Corp., 90 F.3d 1173, 1188 (6th Cir. 1996) (observing that employer had no way of knowing when, or even if, employee would return to work).

Based on the aforementioned, Plaintiff can not make out a prima facie case under the ADA because, at the time of his termination, he was not a qualified individual within the meaning of the ADA. Consequently, the Court will grant summary judgment in favor of Defendant on counts II and IV.

**IV. CONCLUSION**

For the reasons noted above, Defendant's motion for summary judgment as to all of Plaintiff's claims will be granted. An appropriate Order will follow.